UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PETER POWERS,

*Plaintiff,*

– against –

THE TOWN OF EAST HAMPTON, *et al.*,

*Defendants.*

**MEMORANDUM & ORDER**
24-cv-02263 (NCM) (ST)

**NATASHA C. MERLE**, United States District Judge:

Before the Court is defendant the Town of East Hampton's ("East Hampton"), and defendants Kathee Burke-Gonzalez, David Lys, Cate Rogers, Thomas Flight, Ian Calder-Piedmonte, and Michael D. Sarlo's (collectively, the "individual defendants") motion to dismiss plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons stated below, defendants' motion to dismiss is GRANTED.

## BACKGROUND

Beginning in or around November 2004, plaintiff Peter Powers began working as a probationary police officer for East Hampton. Amended Complaint ("AC") ¶ 7, ECF No. 4. Less than two years later, he was permanently appointed as a police officer. AC ¶ 8.

---

[1] The Court hereinafter refers to the Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint, ECF No. 25-4, as the "Motion"; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion, ECF No. 25-6, as the "Opposition"; and the Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss, ECF No. 25-14, as the "Reply".

Plaintiff was eventually promoted to the position of "probationary sergeant," and assigned to "Squad No. 5." AC ¶ 9. In April 2016, Andrea Kess was appointed to the position of probationary police officer and was also assigned to Squad No. 5. AC ¶ 10. Plaintiff served as Kess's squad supervisor and was responsible for completing Kess's weekly, monthly, and annual performance evaluations. AC ¶ 13. Around January 1, 2017, plaintiff was transferred to a different squad and no longer supervised Kess. *See* AC ¶¶ 14, 16. About five months after transferring squads, plaintiff was promoted to the position of lieutenant. *See* AC ¶ 17. He then "immediately informed" defendant Sarlo, East Hampton's chief of police, of his "newly formed personal-intimate relationship" with Kess. AC ¶ 18.

On May 25, 2023, Kess filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). AC ¶ 26; *see* AC Ex. 1, Kess EEOC Charge ("First EEOC Charge"), ECF No. 4-1.[2] One month later, Kess filed a second amended charge of discrimination with the EEOC. AC ¶ 27; *see* AC Ex. 2, Kess EEOC Charge Amended ("Second EEOC Charge"), ECF No. 4-2. Plaintiff "was aware" that Kess filed the First and Second EEOC Charges, and he "fully supports her and the representations in both documents." AC ¶¶ 27–28. On October 26, 2023, East Hampton, through its attorneys, submitted a "position statement" to the EEOC in response to Kess's charges. *See* AC Ex. 3, Town of East Hampton Position Statement ("Position Statement"), ECF No. 4-3. The Position Statement described Kess as "an aggressive police officer," whose tactics were

---

[2]     The Court "may consider documents attached to the complaint in deciding a motion to dismiss." *Offor v. Mercy Med. Ctr.*, 676 F. App'x 51, 53 (2d Cir. 2017) (summary order).

"questionable" and raised "concerns." Position Statement 3.[3] The Position Statement further explained that Kess's supervisors declined to place her in a supervisory role due to these concerns, as well as "her difficulty accepting supervision, her lack of attention to the chain of command, and her inability to work collaboratively with other officers." Position Statement 3–4.

The Position Statement contained two key disclosures pertaining to plaintiff. First, the Position Statement stated that plaintiff was Kess's "sergeant and direct report" when she "completed her probationary period in October, 2017." Position Statement 3. It further stated that "within one (1) month of the completion of [Kess]'s probationary period," plaintiff was promoted to lieutenant, and that he informed Sarlo that he "was not only dating [Kess] but that the two would be moving in together." Position Statement 3. Second, the Position Statement stated that many instances of Kess's "misconduct, incompetence, and problematic policing . . . were not documented as a result of her relationship" with plaintiff. Position Statement 4. The Position Statement elaborated that "supervisory officers . . . recoiled from further documenting [Kess's] deficiencies for fear of retribution" from plaintiff. Position Statement 9.

Sometime in November 2023, Kess "disclosed the Position Statement" to plaintiff. *See* AC ¶ 29. Prior to that point, plaintiff had not spoken with any of the defendants about the "so-called facts attributed to him" in the Position Statement. AC ¶ 30. The Position Statement's representations about plaintiff were "false." AC ¶ 33. Specifically, the Position Statement "falsely claimed [that] [plaintiff] supervised and evaluated [Kess] for a longer

---

[3]    Throughout this Opinion, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

period that's inconsistent with department records." AC ¶ 34. Additionally, plaintiff "decided to have conversations with other supervisors regarding the Position Statement." AC ¶ 36. In the weeks that followed, plaintiff met with multiple supervisors and "read excerpts from the Position Statement," and asked for the supervisors' opinions. *See* AC ¶¶ 37, 39. In those meetings, no supervisor claimed that "they could not perform their job" with respect to Kess due to fear of plaintiff, and "not one supervisor claimed they were personally interviewed or reviewed the Position Statement" before it was submitted to the EEOC. AC ¶¶ 40–41. This culminated in a meeting with Sarlo, in which plaintiff was told that the Position Statement contained "some inaccuracies" attributable to East Hampton's legal counsel who prepared the statement. *See* AC ¶¶ 42–43. About a week after this meeting, Sarlo served plaintiff with a "memorandum essentially instructing him that there [wa]s an on-going investigation regarding the work place and [plaintiff] [wa]s specifically precluded from making any further inquiries about the Position Statement or matters related to it." AC ¶ 48.

On March 27, 2024, plaintiff filed the instant action, alleging that defendants retaliated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"); 42 U.S.C. § 1983 ("Section 1983"); and New York State Executive Law § 296 ("NYSHRL").[4] *See generally* Compl., ECF No. 1. The following day, plaintiff filed a "corrected" complaint, alleging the same claims against the same defendants, but

---

[4]   On September 5, 2024, Kess filed a complaint in this district against many of the same defendants that are named in the instant complaint, bringing claims for gender discrimination, retaliation, and hostile work environment pursuant to Title VII, the Equal Protection Clause of the Fourteenth Amendment, and the NYSHRL. *See Kess v. The Town of East Hampton, et al.*, No. 24-cv-06226 (E.D.N.Y. filed Sept. 5, 2024), ECF No. 1.

attaching five exhibits. *See generally* AC. Defendants move to dismiss plaintiff's complaint in its entirety for failure to state a claim pursuant to Rule 12(b)(6). *See* Mot. 6.[5]

## LEGAL STANDARD

When deciding a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014).[6] Factual disputes are typically not the subject of the Court's analysis, as Rule 12 motions "probe the legal, not the factual, sufficiency of a complaint." *Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of N.Y., Inc.*, 64 F. Supp. 3d 459, 468–69 (E.D.N.Y. 2014). That is, "the issue" on a motion to dismiss "is not whether a plaintiff will ultimately

---

[5]     The Court held oral argument on defendants' motion on June 11, 2025. *See* ECF Minute Entry dated June 11, 2025. Shortly thereafter, plaintiff submitted a supplemental letter purporting to "address the Court's inquir[ies]" during oral argument, despite the Court not requesting supplemental briefing or authorities. Pl.'s Suppl. Letter dated June 12, 2025, ECF No. 27. Although plaintiff fashions his letter as a supplemental authority letter, given the arguments raised therein, the Court construes plaintiff's letter as an application for leave to file a sur-reply. *See Norton v. Town of Brookhaven*, No. 13-cv-03520, 2020 WL 364159, at *5 (E.D.N.Y. Jan. 21, 2020). "The decision whether to permit a sur-reply rests in the Court's sound discretion." *SEC v. Xia*, No. 21-cv-05350, 2022 WL 2784871, at *1 (E.D.N.Y. July 15, 2022). "Sur-replies are appropriate only in the exceptional though rare case when a party demonstrates to the court that papers to which it seeks to file a reply raise new issues which are material to the disposition of the question before the court, or when the court determines that it wishes further briefing." *Id.* Plaintiff fails to demonstrate that defendants' reply papers raise new issues, and the Court did not request further briefing. Moreover, plaintiff's letter does not provide any new information bearing on an issue before the Court, nor arguments that could not have been raised by plaintiff in his opposition brief. Accordingly, the Court declines to consider the information offered by plaintiff in his proposed sur-reply. *See Norton*, 2020 WL 364159, at *5.

[6]     Throughout this Opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

prevail" but instead whether a plaintiff is "entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012).

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Although the Court takes all factual allegations contained in the complaint as true, it does not do so for legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" in a complaint. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiff brings his claims for retaliation pursuant to three statutes: (1) Title VII; (2) Section 1983; and (3) the NYSHRL. As a threshold matter, "the elements of a retaliation claim based on an equal protection violation under § 1983 mirror those under Title VII." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015). Thus, once action under color of state law is established, claims for retaliation under Title VII and Section 1983 "must stand or fall together." *Sotolongo v. N.Y.S. Dep't of Motor Vehicles*, No. 19-cv-03282, 2020 WL 4261194, at *4 n.2 (quoting *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004)); *see also Holcomb v. State Univ. of N.Y. at Fredonia*, 698 F. App'x 30, 31 (2d Cir. 2017) (summary order) ("Title VII, Section 1983, and NYSHRL claims for retaliation are all analyzed pursuant to Title VII principles."). Because

defendants do not contest plaintiff's allegation that their actions were taken "under color of law," AC ¶¶ 52–62, the Court may analyze both of plaintiff's federal retaliation claims together. *See e.g.*, *Day v. City of New York*, No. 15-cv-04399, 2015 WL 10530081, at *6 n.6 (S.D.N.Y. Nov. 30, 2015), *report and recommendation adopted*, 2016 WL 1171584 (Mar. 22, 2016) ("Because defendants do not dispute that plaintiff has adequately alleged that [the defendants] were acting under color of state law, I shall address plaintiff's Title VII and Section 1983 . . . claims together.").

## I. Federal Retaliation Claims

Plaintiff's federal retaliation claims "are evaluated under the three-step burden-shifting analysis from *McDonnell Douglas Corp.*" *Holcomb*, 698 F. App'x at 31 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)). The first step under *McDonnell Douglas* requires a plaintiff to "establish a prima facie case of retaliation," after which the burden shifts to the defendant to "articulate some legitimate, non-retaliatory reason" for the adverse employment action. *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844–45 (2d Cir. 2013). If the defendant "make[s] such a showing, the plaintiff then has an opportunity to show that the proffered reason was not the true reason for the employment decision." *Corona v. Clarins U.S.A., Inc.*, No. 17-cv-04438, 2019 WL 4393082, at *6 (S.D.N.Y. Sept. 12, 2019).

To establish a prima facie case of retaliation, a plaintiff must show that "(1) [the plaintiff] engaged in protected activity, (2) the defendant was aware of that activity, (3) [the plaintiff] was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions." *Carr v. N.Y.C. Transit Auth.*, 76

F.4th 172, 180 (2d Cir. 2023); *see also Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 204 (2d Cir. 2006).

The sum and substance of plaintiff's prima facie case is that East Hampton, through the individual defendants, made "false representations" in its Position Statement about plaintiff's "professional reputation[,] designed to . . . retaliate against him for supporting" Kess and her EEOC charges. AC ¶ 47. Plaintiff argues that these allegations support a claim for retaliation because they show that he "participated in the protected activity" of his intimate partner, which caused defendants to make false representations to the EEOC "intended to dissuade [plaintiff and Kess] from protecting their legal rights and maintaining their professional reputations." Opp'n 11–12, 14. Plaintiff separately argues—without citing to any allegation in the amended complaint—that he was retaliated against for "oppos[ing] [the Position Statement's] falsity by confronting the defendants, particularly [d]efendant . . . Sarlo." Opp'n 12–13.

Defendants contend that these allegations fail to state a retaliation claim for at least three reasons. First, defendants argue that the amended complaint fails to "identif[y] a protected activity undertaken by the plaintiff[.]" Mot. 10. Second, defendants contend that plaintiff fails to allege "any facts demonstrating that [he] suffered an adverse employment action." Mot. 10. Third, defendants assert that plaintiff's retaliation claims fail as a matter of law because he fails to plausibly allege causality "between the alleged protected activity of supporting Officer Kess'[s] charge of discrimination and the alleged retaliation of setting forth false statements in a position statement five (5) months later." Mot. 15. The Court addresses each argument in turn.

A. *Protected Activity*

A plaintiff bringing federal retaliation claims must plausibly allege that "he engaged in protected activity[,]" and that his "employer was aware of that activity." *Mitchell v. State Univ. of N.Y. Upstate Med. Univ.*, 723 F. App'x 62, 63 (2d Cir. 2018). "[P]rotected activity is any activity which is taken to protest or oppose unlawful employment practices under Title VII." *Lewis v. N.Y.C. Transit Auth.*, 12 F. Supp. 3d 418, 449 (E.D.N.Y. 2014) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000)). Thus, there are two species of protected activity under Title VII: (1) participation; and (2) opposition. *See Bliss v. MXK Rest. Corp.*, 220 F. Supp. 3d 419, 425 (S.D.N.Y. 2016) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015)). Participation includes "making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing" related to an unlawful employment practice. *Trivedi v. St. Peter's Health Partners Med. Assocs., P.C.*, No. 23-cv-07608, 2024 WL 5087524, at *4 (2d Cir. Dec. 12, 2024) (summary order). Opposition encompasses "any activity designed to resist or antagonize; to contend against; to confront; resist; or withstand" unlawful employment practices. *Littlejohn*, 795 F.3d at 317 (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009)).

Plaintiff argues that he engaged in both protected "participation" and "opposition" activity. *See* Opp'n 12–13. Specifically, plaintiff alleges that he was "aware" Kess filed her First and Second EEOC Charges, AC ¶¶ 26–27, and that he "fully supports her and the representations made" in both charges, AC ¶ 28. Therefore, in plaintiff's view, these

allegations demonstrate that he "participated in the protected activity" of Kess.[7] Opp'n 12. Plaintiff further argues—without citing to any allegation in the amended complaint[8]—that he engaged in protected activity by "oppos[ing]" the "falsity" of the Position Statement by confronting the defendants, specifically Sarlo, about the statement's alleged misrepresentations. Opp'n 12–13.

These allegations are insufficient to support a reasonable inference that plaintiff engaged in protected activity. For one, plaintiff provides no facts as to how he "support[ed]" Kess in filing her EEOC charges, and thus participated in protected activity. *See* AC ¶ 28. For instance, plaintiff does not allege that he assisted Kess with drafting or

---

[7]    The Court notes that there appears to be an open question in this Circuit as to whether a plaintiff can base his Title VII retaliation claim on the protected activity of an intimate partner. *See Glover v. Fed. of Multicultural Programs, Inc.*, No. 15-cv-03238, 2020 WL 70880, at *5 (E.D.N.Y. Jan. 3, 2020) ("The Second Circuit has not squarely addressed under what circumstances a person may bring a retaliation claim alleging retaliation for another person's protected conduct."); *Gonzalez v. NYU Langone Med. Ctr.*, No. 18-cv-01797, 2019 WL 4194313, at *6 (S.D.N.Y. Sept. 3, 2019) (explaining that "neither the Supreme Court nor the Second Circuit has foreclosed" a third party retaliation claim); *see also Ulrich v. Soft Drink Brewery Workers*, 425 F. Supp. 3d 234, 244–45 (S.D.N.Y. 2019) (explaining  that the "current state of the law" did not support a retaliation claim where the plaintiff did not engage in "his *own* protected activity," but observing that "some courts have noted that a plaintiff may be permitted to proceed with a retaliation claim on the basis that the plaintiff was retaliated against for a charge of discrimination filed by her sister or other close relative"). As explained *infra*, because plaintiff fails to plausibly allege an adverse employment action, the Court need not decide whether he can state a retaliation claim based on the protected activity of his intimate partner. *See Brightman v. Prison Health Serv., Inc.*, No. 05-cv-03820, 2007 WL 1029031, at *6 (E.D.N.Y. Mar. 30, 2007) ("The Court finds it unnecessary to determine whether Plaintiff participated in a protected activity because Plaintiff has not adequately pled any adverse employment action that would support a claim of retaliation.").

[8]    At oral argument, plaintiff stated that one of the most "germane argument[s]" related to his protected activity allegation was that plaintiff "challenged the veracity" of the Position Statement by confronting Sarlo. Hr'g dated June 11, 2025 ("June 11 Tr.") 12:6–20 (draft on file with Court).

filing her EEOC charges, nor does he allege that he was "named as a voluntary witness in support" of her charges. *Gardel v. City of New York*, No. 04-cv-03506, 2006 WL 3024725, at *3 n.3 (E.D.N.Y. Oct. 23, 2006) (citing *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 174 (2d Cir. 2005)); *cf. Fergus v. City of New York*, No. 05-cv-03361, 2008 WL 11433197, at *10 (E.D.N.Y. July 2, 2008), *report and recommendation adopted*, 2008 WL 11433198 (July 29, 2008) (concluding that wife engaged in protected activity by assisting her husband in drafting complaints of discrimination); *Eustace v. Suffolk County*, No. 06-cv-05490, 2009 WL 10702835, at *3 (E.D.N.Y. Mar. 31, 2009) (reasoning that husband's assistance to wife "in filing her lawsuit and his identification as a witness in his wife's gender discrimination suit . . . constitute[d] protected activity under Title VII"). Similarly, plaintiff does not allege if or how he vocalized or otherwise actively supported Kess when she filed her charges.[9] *See Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (explaining that Title VII protects "informal protests of discriminatory employment practices" including "*expressing* support of co-workers who have filed formal charges") (emphasis added); *see also Littlejohn*, 795 F.3d at 318 ("[I]f an employee . . . *actively* supports other employees in asserting their Title VII rights . . . that employee has engaged in a protected activity" under Title VII) (emphasis added).

---

[9] Plaintiff's counsel represented that plaintiff "spoke to a number of different people," in support of Kess's discrimination charges. June 11 Tr. 12:6–20. However, this allegation is not included in the complaint. *See United Prob. Officers Ass'n v. City of New York*, No. 21-cv-00218, 2022 WL 875864, at *8 n.9 (S.D.N.Y. Mar. 24, 2022) ("Plaintiffs may not amend their pleading through statements made at argument."). And in any event, this allegation is insufficient on its own to support an inference that plaintiff engaged in protected activity in the absence of context about the conversations, or detail as to whether these conversations took place before or after the complaint was filed.

Indeed, plaintiff's amended complaint fails to allege that anyone "other than [Kess] knew of plaintiff's" support. *Williams v. N.Y.C. Hous. Auth.*, No. 12-cv-00825, 2013 WL 12080915, at *6 (E.D.N.Y. Aug. 7, 2013) (granting summary judgment on retaliation claim where plaintiff presented no evidence that anyone knew plaintiff advised her subordinate to file an internal complaint); *see also Reiter v. Metro. Tr. Auth. of the State of N.Y.*, No. 01-cv-02762, 2002 WL 31190167, at *7 n.4 (S.D.N.Y. Sept. 30, 2002) (concluding that "there c[ould] be no retaliation claim based on the plaintiff's participation of his wife's [EEOC] claims," where plaintiff provided "no evidence that the defendants knew of any assistance that the plaintiff gave to his wife").

Plaintiff's argument that, "[i]n the EEOC's view, playing *any* role in an internal investigation should be deemed to constitute protected participation," is unavailing. Opp'n 12 n.1. Plaintiff provides no authority that "any role" in an internal investigation amounts to "protected participation." *See* Opp'n 12 n.1. Moreover, plaintiff himself admits that he did not in fact play a role in the EEOC's investigation. *See* AC ¶ 30 (alleging that "no one had a conversation with" plaintiff "regarding so-called facts attributed to him" in the Position Statement). Plaintiff implies that his mere "aware[ness]" of Kess's complaint amounted to protected participation. *See* Opp'n 6. However, in the absence of additional facts, such as allegations that explain how plaintiff "support[ed]" Kess or whether this "support[]" was even expressed, *see* Opp'n 6, the Court declines to adopt such an unsupported and overly broad interpretation of "protected participation" for purposes of plaintiff's federal retaliation claims. *See e.g.*, *Dotson v. City of Syracuse*, 688 F. App'x 69, 73 (2d Cir. 2017) (concluding that plaintiff failed to show she engaged in protected activity when she privately told coworker "to seek legal counsel in filing an EEOC complaint").

Plaintiff's argument that his "oppos[ition]" to the Position Statement's alleged "falsity" constituted protected activity is similarly misplaced. Opp'n 12. While plaintiff is correct that the scope of Title VII's "opposition clause is broad," he must still allege facts indicating that he "opposed any practice made unlawful by Title VII." *Bliss*, 220 F. Supp. 3d at 425; *see also Sumner*, 899 F.2d at 209 (explaining that Title VII protects "informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges"). Plaintiff fails to plausibly allege that disputing alleged misrepresentations in a confidential filing in connection with EEOC charges amounts to "confront[ing]; resist[ing]; or withstand[ing]" an unlawful employment practice. *Littlejohn*, 795 F.3d at 317. Indeed, "[t]he submission of a position statement is a routine matter and is, in fact, requested by the EEOC as part of the Commission's investigation process." *Guity v. Uniondale Union Free Sch. Dist.*, No. 12-cv-01482, 2014 WL 1330636, at *19 (E.D.N.Y. Mar. 31, 2014).

Accordingly, plaintiff fails to plausibly allege that he engaged in either protected "participation" or "opposition" activity, and thus his federal retaliation claims must be dismissed. Moreover, even if plaintiff did plausibly allege that he engaged in protected activity, his federal retaliation claims would still be dismissed because he fails to plausibly allege a material adverse employment action.

### B.  *Material Adverse Action*

Unlike its antidiscrimination provision, Title VII's antiretaliation provision is "not limited to discriminatory actions that affect the terms and conditions of employment."

*Banks v. Gen. Motors, LLC*, 81 F.4th 242, 275 (2d Cir. 2023). Instead, a plaintiff meets his burden on a motion to dismiss by plausibly alleging "that a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). That is, employer action that "might . . . dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Id.* However, "Title VII does not protect employees from all retaliation"—a plaintiff must plausibly allege "retaliation that produces an injury or harm." *Mitchell v. SUNY Upstate Med. Univ.*, 243 F. Supp. 3d 255, 277 (N.D.N.Y. 2017). Whether challenged employer action is materially adverse depends on context because "some actions may take on more or less significance depending on the context." *Tepperwien v. Entergy Nuclear Ops., Inc.*, 663 F.3d 556, 568 (2d Cir. 2011); *see also Marby v. Neighborhood Def. Serv.*, 769 F. Supp. 2d 381, 398 (S.D.N.Y. 2011) ("The context of any given act matters in determining whether it would deter a reasonable employee from complaining about discrimination.").

Plaintiff contends that he was retaliated against by way of the "false representations" in East Hampton's Position Statement filed in opposition to Kess's EEOC charges. *See* AC ¶ 32. Specifically, plaintiff takes issue with defendants' representation that he "supervised and evaluated [Kess] for a longer period" than he actually did. *See* AC ¶ 34. Plaintiff also alleges that the Position Statement "falsely claimed" that other supervisors in East Hampton's police department "failed to document . . . Kess's deficiencies, incidents of misconduct, incompetence, and problematic policing for fear of retribution from [plaintiff]." AC ¶ 35. Plaintiff alleges that these "false representations" were designed to dissuade him—and Kess—from "protecting their legal rights, professional and personal reputation[s]." AC ¶ 46. Plaintiff also argues that,

14

following his "oppos[ition]" to the Position Statement, he was "effectively silenc[ed]" by way of an internal memorandum issued by Sarlo instructing plaintiff "not to further inquire about the Position Statement or related matters[.]" Opp'n 14.

These allegations plainly fall short of a materially adverse action. To begin, "false allegations, alone, may not constitute an adverse employment action." *Alvarado v. Mount Pleasure Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 784 (S.D.N.Y. 2019); *see also Van Dyke v. Partners of Debevoise & Plimpton LLP*, No. 12-cv-08354, 2013 WL 5375542, at *3 (S.D.N.Y. Sept. 24, 2013) ("[R]etaliatory and harassing comments, malicious gossip, and leaking of sensitive information—do not constitute a materially adverse employment action."). This is all the more so in the instant context, where the allegedly "false accusations" are contained in documents pertaining to an employer's investigation in connection with EEOC proceedings. *See Guity*, 2014 WL 1330636, at *19 (finding submission of a position statement is a routine matter and defendant's submission did not constitute a materially adverse employment action); *see also Hiralall v. Sentosacare, LLC*, No. 13-cv-04437, 2016 WL 1126530, at *12 (S.D.N.Y. Mar. 18, 2016) ("Even when an accusation in a disciplinary notice is allegedly false, this Circuit has not found such false accusations, without more, to be a cognizable retaliatory adverse employment action.").

Moreover, the falsities of which plaintiff complains are at most "trivial harms" that "do not constitute materially adverse employment action." *Rasko v. N.Y.C. Admin. for Childs. Serv.*, 734 F. App'x 52, 55 (2d Cir. 2018). For instance, plaintiff fails to allege facts indicating why the Position Statement's alleged mischaracterization of how long he "supervised and evaluated" Kess would dissuade a reasonable worker from bringing or supporting a discrimination charge. *See* AC ¶ 34; *see also Bentivegna v. People's United*

15

*Bank*, No. 14-cv-00599, 2017 WL 3394601, at \*21 (E.D.N.Y. Aug. 7, 2017) ("[N]ot every slight from an employer is actionable under Title VII. . . . [N]ot everything that makes an employee unhappy is an actionable adverse action."). And plaintiff fails to explain how the Position Statement's inclusion of statements from other officers, even if they were inaccurate, would dissuade a reasonable worker from bringing or supporting a discrimination charge. *See Wenchun Zheng v. Gen. Elec. Co.*, No. 15-cv-01232, 2016 WL 10859373, at \*9 (N.D.N.Y. Jan. 12, 2016), *report and recommendation adopted*, 2016 WL 447496 (Feb. 4, 2016) (dismissing retaliation claims where plaintiff failed to demonstrate "that an employer's EEOC position statement containing inaccurate or inflammatory claims would dissuade a reasonable employee from making or supporting a charge of discrimination").

Plaintiff's argument that the allegedly false representations in the Position Statement were "designed to dissuade" him and other East Hampton employees from "protecting their legal rights, professional and personal reputation[s]" Opp'n 9, and "participating as favorable witnesses," Opp'n 13, is unavailing. For one, the notion that the Position Statement dissuaded plaintiff from "protecting [his] legal rights, professional and personal reputation," is belied by plaintiff's conduct subsequent to his review of the Position Statement. Opp'n 9. After Kess disclosed the statement's contents to plaintiff, he proceeded to "have conversations with other supervisors," AC ¶ 36, about the statement, including by "confronting the defendants" about the statement's alleged "falsity." Opp'n 12. Indeed, based on plaintiff's allegations, it would seem that the purpose of these "conversations," AC ¶ 37, were to protect plaintiff's reputation, as well as his legal rights, if any were implicated. *See* Opp'n 13–14. And in any event, plaintiff cannot plausibly allege

that the Position Statement's misrepresentations "dissuaded" him from engaging in protected activity when he also alleges that he engaged in protected activity specifically *because* of the Position Statement, namely, his "oppos[ition]" to its "falsit[ies]." *See* Opp'n 12; *see also Wenchun Zheng*, 2016 WL 10859373, at *9 (reasoning that the plaintiff "was not dissuaded" from engaging in protected activity where the plaintiff continued to engage in protected activity even "after seeing [the defendant's] response" to EEOC charges).

Moreover, plaintiff fails to explain how the alleged harm to his reputation—which he contends would dissuade a reasonable worker from "protecting their legal rights," Opp'n 9—was caused by "false representations" in a confidential filing prepared by East Hampton's counsel as part of an EEOC proceeding. *See* Position Statement 1; Mot. 5. On the contrary, any harm to plaintiff's reputation was a function of *his* conduct when he publicly shared the contents of the Position Statement with his supervisors after Kess disclosed them to plaintiff.[10] *See* AC ¶¶ 36–39. In fact, plaintiff alleges that none of his coworkers ever "reviewed the Position Statement," nor were interviewed for the Position Statement, at any point before it was submitted to the EEOC. AC ¶¶ 40–41. What's more,

---

[10]    For this reason, plaintiff's argument that "public disclosures or statements that disparage an employee can be considered materially adverse and retaliatory," is misplaced. Opp'n 11. Unlike his cited cases, plaintiff alleges no facts indicating that defendants' allegedly false representations were publicly disclosed but for plaintiff's own conduct. *Cf. Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (explaining that a public comment by the defendant's counsel to news reporters "that [the plaintiff], a police officer, had stolen fellow officers' paychecks, though not affecting the terms or conditions of [the plaintiff's] employment, might well have dissuaded a reasonable police officer from making a complaint of discrimination"); *see also Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 485 (concluding that "listing [the plaintiff's] name in publicly available SEC filings (and referring to her [EEOC] complaint as meritless) constituted a materially adverse employment action").

plaintiff himself alleges that the Position Statement's representations were intended to be "concealed" from plaintiff and his coworkers. *See* AC ¶ 31. Thus, plaintiff's allegations create a reasonable inference that it was his dissemination of the contents of the Position Statement which, "harm[ed] his personal and professional reputation[,]" if at all.[11] *See* AC ¶ 51. In short, plaintiff fails to allege facts "suggest[ing] that [defendants'] EEOC position statement containing inaccurate or inflammatory claims would dissuade a reasonable employee from making or supporting a charge of discrimination," and accordingly does not allege an adverse employment action. *Wenchun Zheng*, 2016 WL 10859373, at *9.

Plaintiff's allegation that Sarlo issued a memorandum informing plaintiff of "an on-going investigation regarding the work place," and instructing him to refrain "from making any further inquiries about the Position Statement," is also meritless. AC ¶ 48. "[I]nvestigations alone are . . . not adverse employment actions." *Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 227 (S.D.N.Y. 2016); *see also Lynch v. Brennan*, No. 15-cv-02479, 2017 WL 3309747, at *8 (S.D.N.Y. Aug. 2, 2017) ("[A]n investigation into an accusation of wrongdoing is alone insufficient to amount to an adverse employment action."). This is even more so where, as here, plaintiff does not allege that he "suffered any discipline as a result" of the investigation or underlying accusations. *Lynch*, 2017 WL 3309747, at *8. To the extent plaintiff contends that being

---

[11]    Plaintiff's argument that, even though the Position Statement was filed confidentially, the representations within the Position Statement would have been known because "[p]olice officers talk all the time," is misplaced. June 11 Tr. 14:20–15:17. Indeed, as counsel later admitted, other officers within East Hampton's police department "didn't know what was in the [Position] [S]tatement until [plaintiff] showed it to them." June 11 Tr: 16:21–17:3.

instructed not to further inquire into the Position Statement was itself discipline or an adverse action, he fails to allege facts plausibly suggesting that this instruction was anything more than East Hampton "enforc[ing] . . . its preexisting disciplinary policies in a reasonable manner," to facilitate its investigation. *Sanossian v. Valley Stream Cent. High Sch. Dist.*, No. 16-cv-04697, 2022 WL 976814, at *13 (E.D.N.Y. Feb. 16, 2022), *report and recommendation adopted*, 2022 WL 970807 (Mar. 31, 2022); *see also Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) ("[A]dministrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action.").

Accordingly, plaintiff fails to plausibly allege that defendants took an action which would "dissuade[] a reasonable worker from making or supporting a charge of discrimination," and thus fails to plead a material adverse action. *White*, 548 U.S. at 68.

### C. Causation

Plaintiff's federal retaliation claims are also deficient for the additional reason that he fails to plead sufficient factual matter supporting an inference that any of the alleged retaliation he suffered "was in fact caused by his participation" in protected activity. *Williams v. City of New York*, No. 11-cv-09679, 2012 WL 3245448, at *10 (S.D.N.Y. Aug. 8, 2012). "A causal link is alleged either by pleading facts to support the inference that the defendant was motivated by retaliatory animus, or by pleading a close temporal proximity between the protected activity and the retaliatory action." *Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21-cv-02512, 2022 WL 524551, at *11 (S.D.N.Y. Feb. 22, 2022) (citing *Sumner*, 899 F.2d at 209). In instances when "mere temporal proximity is offered to demonstrate causation, the protected activity and the adverse action must occur

very close together." *Gonzalez*, 2019 WL 4194313, at *4. Although there is no "bright line" defining "the outer limits beyond which a temporal relationship is too attenuated to establish" a causal nexus, larger gaps between the protected activity and alleged retaliation must be "accompanied by other indicia of retaliatory motive." *Alvarado*, 404 F. Supp. 3d at 785 (S.D.N.Y. 2019) (quoting *Summa v. Hofstra Univ.*, 708 F.3d 115, 128–29 (2d Cir. 2013)).

The amended complaint does not identify how or when plaintiff engaged in protected activity by "support[ing]" Kess's EEOC charges, AC ¶ 28. Because plaintiff alleges that he "was aware" that Kess filed her First and Second EEOC Charges on May 25, 2023, and June 30, 2023, respectively, the Court construes those dates as when plaintiff alleges that he engaged in protected activity. *See* AC ¶¶ 26–27. Plaintiff asserts that his support of Kess caused him to be retaliated against by way of East Hampton's Position Statement, dated October 26, 2023, nearly four months after plaintiff's most recent alleged protected activity—when Kess filed her Second EEOC Charge.[12] *See* AC ¶ 29.

Plaintiff's causation allegations are plainly lacking. "[C]ourts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of

---

[12]    Because plaintiff fails to plausibly allege that his opposition to the Position Statement was protected activity, *see* Part I.A, and that Sarlo's memorandum in response amounted to a material adverse action, *see* Part I.B, the Court does not address whether he plausibly alleges a causal link between the two. *See Scott-Robinson v. City of New York*, No. 15-cv-0970, 2016 WL 7378775, at *5 (S.D.N.Y. Dec. 15, 2016) ("Because plaintiff fails to adequately allege that she suffered an adverse action, we do not consider whether she has alleged a causal connection between the protected activity and the adverse action.").

causation." *Murray v. Visiting Nurse Serv. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (collecting cases); *see also Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 104 (2d Cir. 2020) (agreeing with district court's conclusion that the plaintiff "failed to demonstrate an adequate causal link between his protected activity and allegedly adverse actions" based on "3.5-month period between" the "protected activity and allegedly adverse actions"). The near four month gap between when plaintiff "support[ed]" Kess's Second EEOC Charge and when East Hampton submitted its Position Statement is insufficient to support an inference of causation, particularly where, as here, plaintiff fails to allege any other indicia of retaliatory motive. *See Veronko v. County of Suffolk*, No. 16-cv-02490, 2018 WL 11697437, at *23 (E.D.N.Y. Jan. 30, 2018) ("[A]s a matter of law, the temporal proximity, approximately four months, is simply too attenuated to permit such an inference in the absence of additional evidence establishing Defendant's retaliatory motive.") (collecting cases).

*    *    *

In sum, plaintiff fails to plausibly allege that he engaged in protected activity, was subjected to a material adverse action, and causality between the two. Accordingly, defendants' motion to dismiss plaintiff's federal retaliation claims is granted.[13]

## II.  State Retaliation Claims

Plaintiff correctly points out that the NYSHRL was amended in 2019 to adopt a more liberal pleading standard than that of Title VII. Opp'n 10–11; *see Qorrolli v. Metro.*

---

[13]  Because plaintiff fails to plead a prima facie retaliation claim, the Court does not reach the individual defendants' argument that they are shielded by the doctrine of qualified immunity. *See* Mot. 15–16.

*Dental Assocs.*, 124 F.4th 115, 122–23 (2d Cir. 2024) (explaining that the NYSHRL "historically utilized the same [pleading] standard as Title VII," but it was amended "to align with the NYCHRL's more liberal pleading standard"). However, because plaintiff fails to state a federal retaliation claim, the Court declines to exercise supplemental jurisdiction over plaintiff's NYSHRL claim. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) ("A district court usually should decline the exercise of supplemental jurisdiction when all federal claims have been dismissed at the pleading stage."); *see also Basdeo v. N.Y.C. Transit Auth.*, No. 20-cv-05553, 2022 WL 4121379, at *6 (E.D.N.Y. Sept. 9, 2022) ("As a result of the Court's dismissal of [the] [p]laintiffs' Title VII claims, the Court declines to exercise supplemental jurisdiction over [the] [p]laintiffs' NYSHRL and NYCHRL claims."). Thus, plaintiff's state retaliation claims are dismissed.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is GRANTED. Plaintiff's amended complaint is hereby dismissed. The Clerk of Court is respectfully directed to enter judgment and close the case.

**SO ORDERED.**

   */s/ Natasha C. Merle*
NATASHA C. MERLE
United States District Judge

Dated:        June 20, 2025
              Brooklyn, New York